UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FREDERICK B. ROGERS,

    Plaintiff,

v.                                                                              Case No. 06-C-1007

CATHY JESS and R. WILSON,

    Defendants.

## ORDER

Plaintiff Frederick B. Rogers, a former Wisconsin state prisoner, filed this *pro se* civil rights action under 42 U.S.C. § 1983. He was granted leave to proceed *in forma pauperis* on an Eighth Amendment conditions of confinement claim based on allegations that exposure to plaster, paint, and hazardous debris while incarcerated at the Dodge Correctional Institution caused him pain and suffering. Both parties have filed a motion for summary judgment. These motions are ready for resolution and will be addressed herein.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See*

*Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The fact that both parties have moved for summary judgment, and thus both parties simultaneously are arguing that there is no genuine issue of fact, does not establish that a trial is unnecessary or empower me to enter judgment as I see fit. *See* 10A Charles Alan Wright et al. § 2720 at 327-28 (3d ed. 1998). The court may grant summary judgment only if one of the moving parties is entitled to judgment as

a matter of law on the basis of the material facts not in dispute. *See Mitchell v. McCarty*, 239 F.2d 721, 723 (7th Cir. 1957). Cross-motions for summary judgment do not convert a dispute into a question of law if material factual questions are involved and additional evidence may be adduced at trial which would be helpful in the disposition of the case. *See M. Snower & Co. v. United States*, 140 F.2d 367 (7th Cir. 1944). Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own motion does not automatically indicate that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. *See* 10A Charles Alan Wright et al § 2720 at 335.

## FACTS[1]

Defendant Cathy Jess is presently employed by the Wisconsin Department of Corrections (DOC) as Warden of Dodge Correctional Institution (DCI). (Plaintiff's Proposed Finding of Fact (PFOF) ¶ 2; Affidavit of Cathy Jess (Jess Aff.) ¶ 1.) She has held this position since December 5, 2004. (*Id.*) In her capacity as Warden, defendant Jess is responsible for the overall administration and operation of DCI. (Jess Aff. ¶ 2.) She has the responsibility at the institution level for implementing all DOC policies and directives as well as legislative and judicial mandates. (*Id.*) As Warden, Jess is also a custodian of the regularly conducted business records of

---

[1]This section is taken from the plaintiff's "Facts of Findings," which is located in his March 21, 2007, Motion for Summary Judgment, and from the Defendants' Proposed Findings of Fact. Facts are included in this section only to the extent that they would be admissible in evidence and otherwise comply with Federal Rule of Civil Procedure 56(e).

DCI. (Jess Aff. ¶ 3.) She is familiar with policies applicable to DCI and the general operation of this institution. (*Id.*)

Defendant Ron Wilson is employed by the DOC at DCI as the Buildings & Grounds (Maintenance) Supervisor and has been so employed since September 2001. (PFOF ¶ 3; Affidavit of Ron Wilson (Wilson Aff.) ¶ 2.) In that capacity, one of Wilson's responsibilities is to monitor the normal operations for repairs to the institution. (Wilson Aff. ¶ 3.)

Plaintiff Frederick Rogers has been allowed to proceed on an Eighth Amendment claim that defendants Jess and Wilson were deliberately indifferent to the conditions of his confinement when he was placed in Unit 10, Cell 4, where old plaster, paint, and hazardous debris caused by a tornado were allegedly present and caused him pain and suffering. (Jess Aff. ¶ 4; Wilson Aff. ¶ 4.) The plaintiff was placed in Unit 10, Cell 4 on July 14, 2006, and remained there until August 2006. (PFOF ¶ 1; Jess Aff. ¶ 5.)

The tornado that came through Waupun in June 2004, did not directly hit the main institution building where Unit 10, Cell 4 is located.[2] (Jess Aff. ¶ 6; Wilson Aff. ¶ 5.) There was no damage to the main institution building by this tornado.[3] (Jess Aff. ¶ 7; Wilson Aff. ¶ 6.)

---

[2]The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Further, his response does not address the proposed fact. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[3]The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

DCI maintenance staff conduct continual routine checks to the building for structural, electrical and plumbing issues including water damage, asbestos, mold, or hazardous debris. (Jess Aff. ¶ 8; Wilson Aff. ¶ 7.) They also implement preventative measures and respond to work orders for general maintenance issues.[4] (*Id.*) During their routine checks, DCI maintenance staff found that Unit 10, Cell 4 had no water damage, asbestos, mold, or hazardous debris and posed no potential risk to DCI staff and/or inmates' health or safety. (Jess Aff. ¶ 9; Wilson Aff. ¶ 8.) This was so even after the tornado that the plaintiff alleges caused damage to Unit 10, Cell 4 passed through Waupun.[5] (*Id.*)

In December 2005, DCI made a request to the Department of State Facilities (DSF) for approval to repair walls in several cells in Unit 10 due to peeling paint and damaged plaster on the walls caused by general wear, the inmates' beds being against the walls and inmates rubbing and digging the exposed plaster.[6] (Jess Aff. ¶ 10; Wilson Aff. ¶ 9.) DSF has the final approval and fund authority for major projects, such as facility repairs within and around the institution. (Jess Aff. ¶ 11; Wilson Aff. ¶ 10.) DCI requested to have these cells repaired because of the potential security risks posed by exposed plaster, such as inmates making holes in

---

[4] The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[5] The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[6] The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

the plaster to hide contraband. (Jess Aff. ¶ 12; Wilson Aff. ¶ 11.) DCI staff did not believe that these cells posed a potential risk to the inmates' health.[7] (*Id.*)

An agent from DSF viewed several rooms in December 2005 and January 2006, one of which was Unit 10, Cell 4, to determine the best course of action to take for the general maintenance improvements that were needed. (Jess Aff. ¶ 13; Wilson Aff. ¶ 12.) DSF found that these cells had no water damage, asbestos, mold, or hazardous debris and that the wall deterioration of these cells was not caused by tornado damage or roof leakage. (Jess Aff. ¶ 14; Wilson Aff. ¶ 13.) DSF further found no potential hazard to DCI staff and/or the inmates' health and safety and approved these cells for continued occupancy.[8] (*Id.*)

The plaintiff was moved from Unit 10, Cell 4 to Unit 10, Cell 19 on August 9, 2006. (Jess Aff. ¶ 15.) Jess was not made aware of this at the time he was moved. (*Id.*)

On August 9, 2006, the plaintiff filed Offender Complaint DCI-2006-22984, complaining that while housed on Unit 10, Cell 4, there was peeling paint and dust coming from the wall and questioning whether or not it was asbestos.[9] (Jess Aff. ¶ 16; Wilson Aff. ¶ 14.) The Inmate Complaint Examiner ("ICE") Joanne Bovee,

---

[7]The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[8]The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[9]The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

contacted defendant Wilson regarding this issue. (Jess Aff. ¶ 17; Wilson Aff. ¶ 15.) Defendant Wilson went to Unit 10, Cell 4 to check on the plaintiff's allegations. (*Id.*) Wilson found that the plaintiff's cell had peeling paint but that there was no asbestos in the cell. (*Id.*) He noted that there were several cells on Unit 10 that were awaiting maintenance, repairs and painting. (*Id.*) Wilson contacted the appropriate department heads to see if the paint crew could be sent to Unit 10 to assist in this project. (*Id.*) Based on this, the ICE recommended that the complaint be dismissed with the modification that the offender complaint be sent to defendant Wilson and to Pat Toutant, Correctional Management Services Director for information and monitoring purposes.[10] (*Id.*)

Upon defendant Wilson's review of Unit 10, Cell 4, there was some peeling paint and cracks in the walls, but no water damage, asbestos, mold, or hazardous debris. (Wilson Aff. ¶ 16.) Wilson did not believe that the cell posed any potential risk to DCI staff and/or inmates' health or safety.[11] (*Id.*) On August 13, 2006, defendant Jess accepted the ICE's recommendation and dismissed with modification Offender Complaint DCI-2006-22984. (Jess Aff. ¶ 18; Wilson Aff. ¶ 17.)

Although defendant Jess has general supervisory authority over DCI operations as provided in the Wisconsin Statutes, Jess does not supervise the day-

---

[10]The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[11]The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

to-day decisions of DCI personnel at the various departments within DCI.[12] (Jess Aff. ¶ 19.) Defendants are not physicians and cannot order medical care and treatment. They do not and are not qualified to provide medical services to inmates at DCI.[13] (Jess Aff. ¶ 20; Wilson Aff. ¶ 22.) Such diagnostic and treatment services are provided to inmates by the DCI Health Services Unit (HSU), an agency of DOC's Bureau of Correctional Health Services. (*Id.*) Defendants exercise no day-to-day supervisory control over HSU employees with regard to diagnostic and treatment decisions; nor are they consulted with respect to their diagnostic and treatment decisions. (*Id.*) Jess exercises no day-to-day control over HSU decisions in calendaring appointments or prescribing medications for inmates with medical staff.[14] (*Id.*)

It is the function of health care professionals, employed in the HSU at the institutions, in consultation with any additional outside providers required, to provide medical diagnosis, care, and treatment for DOC inmates.[15] (Jess Aff. ¶ 21; Wilson Aff. ¶ 23.) Defendants have no knowledge of, nor were they ever personally involved in, any decisions concerning any treatment plans, programs, or any other diagnostic

---

[12]The plaintiff disputes this proposed fact. However, the plaintiff's cited evidence does not support his assertion. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[13]The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[14]The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[15]The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

decisions related to the plaintiff.[16]  (Jess Aff. ¶ 22; Wilson Aff. ¶ 24.)  Defendants have had no personal involvement with the medical care given to the plaintiff.[17]  (Jess Aff. ¶ 23; Wilson Aff. ¶ 25.)

Defendants do not make housing placements for the inmates.  (Jess Aff. ¶ 24; Wilson Aff. ¶ 18.)  Jess does not oversee the housing placements for the inmates.  (Jess Aff. ¶ 25.)  Defendants have no knowledge of, nor were they ever personally involved in, any decisions concerning housing issues related to the plaintiff.[18]  (Jess Aff. ¶ 26; Wilson Aff. ¶ 19.)

Prior to Jess's review of Offender Complaint DCI-2006-22984, she was not made aware of any problems with the conditions of Unit 10, Cell 4.  (Jess Aff. ¶ 27.)  Jess was never made aware of any problems or conditions with this cell that would have required the plaintiff or any other inmate to be moved out of that cell.[19]  (*Id.*)  The plaintiff made no offender complaints prior to DCI-2006-22984 complaining about the conditions of Unit 10, Cell 4.[20]  (Jess Aff. ¶ 28; Wilson Aff. ¶ 20.)  The plaintiff did not write to defendants, or make them aware in any other way of any

---

[16]The plaintiff disputes this proposed fact.  However, he fails to cite to admissible evidence to support his dispute.  Thus, this proposed fact is undisputed.  *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[17]The plaintiff disputes this proposed fact.  However, he fails to cite to admissible evidence to support his dispute.  Thus, this proposed fact is undisputed.  *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[18]The plaintiff disputes this proposed fact.  However, he fails to cite to admissible evidence to support his dispute.  Thus, this proposed fact is undisputed.  *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[19]The plaintiff disputes this proposed fact.  However, he fails to cite to admissible evidence to support his dispute.  Thus, this proposed fact is undisputed.  *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

[20]The plaintiff disputes this proposed fact.  However, he fails to cite to admissible evidence to support his dispute.  Thus, this proposed fact is undisputed.  *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

problems with the conditions of Unit 10, Cell 4 that required the plaintiff to be moved out of that cell prior to August 9, 2006.[21] (Jess Aff. ¶ 29; Wilson Aff. ¶ 21.)

**ANALYSIS**

The plaintiff contends that the defendants were deliberately indifferent to a serious harm in violation of the Eighth Amendment. Specifically, the plaintiff asserts that the defendants knew of the damage and debris in Unit 10, Cell 4 when a tornado hit DCI in June 2004. The plaintiff further asserts that the defendants knew that the debris was causing illness and harm to the inmates. The plaintiff concludes that he was affected by the hazardous debris in Unit 10, Cell 4 and that he must be compensated for his suffering and pain, as well as the permanent and recurring health issues he still experiences today. Alternatively, the plaintiff concludes that based on the evidence, a jury would come to the conclusion that his Eighth Amendment rights were violated when he was made to be sheltered by the defendants in a cell that caused degeneration or threatened his mental and physical well-being.

The defendants contend that: (1) neither Jess or Wilson were deliberately indifferent to the conditions of the plaintiff's confinement in violation of the Eighth Amendment because neither defendant was personally involved in the plaintiff's claimed deprivation of Eighth Amendment rights and because neither defendant was deliberately indifferent to the plaintiff's health or safety; (2) insofar as they are being

---

[21]The plaintiff disputes this proposed fact. However, he fails to cite to admissible evidence to support his dispute. Thus, this proposed fact is undisputed. *See* Fed. R. Civ. P. 56(e); Civil L.R. 56.2 (E.D. Wis.).

sued in their personal capacities, Jess and Wilson enjoy qualified immunity from suit; and (3) insofar as they are being sued in their official capacities, Jess and Wilson are entitled to sovereign immunity.

The Eighth Amendment protects prisoners against cruel and unusual punishment during confinement. U.S. Const. Amend. VIII. A prisoner challenging official conduct that is not part of the formal penalty for a crime must demonstrate: (1) a "sufficiently serious" deprivation; and (2) that officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Prison conditions do not rise to the level of cruel and unusual punishment unless the conditions produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Id.* at 304. With regard to conditions of confinement, the Supreme Court has adopted the "deliberate indifference" standard to determine whether officials display the requisite culpable state of mind. *Id.* at 301-05. Under that standard, prison officials may be found liable for denying humane conditions of confinement only if they know that an inmate faces substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. *See Farmer v. Brennan*, 511 U.S. 825, 838-42 (1994).

**1.     Objective Prong: Sufficiently Serious Harm**

It is undisputed that an agent from DSF viewed several rooms in December 2005 and January 2006, one of which was Unit 10, Cell 4, to determine the best course of action to take for the general maintenance improvements that were needed. It is also undisputed that DSF found that these cells had no water damage,

asbestos, mold, or hazardous debris and that the wall deterioration of these cells was not caused by tornado damage or roof leakage. DSF further found no potential hazard to DCI staff and/or the inmates' health and safety and approved these cells for continued occupancy.

The plaintiff asserts that he was not ill or suffering from past health issues when he entered DCI in July 2006, and that the hazardous debris in Unit 10, Cell 4 caused him unnecessary pain and suffering. In the plaintiffs's July 12, 2006, Intake Screening/Medical History form, he denied having any health conditions "not listed," and denied having any physical complaints at that time. (March 20, 2007, Affidavit of Frederick Rogers, Ex. 1.) However, the form also indicates that the plaintiff had a history of asthma, chronic cough, chest pain, and cancer or sarcoidosis. *Id.*

The plaintiff also includes medical records as exhibits, although much of the writing in these records is unintelligible. As far as the court can decipher from these records, on August 9, 2006, the plaintiff complained of "stuff in his eyes" which he attributed to debris in his cell. (Pl.'s Ex. 1A, Roger's Medical Records 8/8/06-10/31/06.) On August 9, 2006, at 1410 hours, the writer called to Unit 10 and spoke to Officer Jim Dorn who reported that 10-4 (presumably Unit 10 Cell 4) had debris from tornado damage. At 1411 hours, the writer called a lieutenant to change to a cell without debris. The plaintiff's Progress Notes indicate that he was seen by DOC medical personnel multiple times in August, and that he was also seen in September, October, and November. A Clinic Note states that the plaintiff was seen

in the Pulmonary Clinic at UW Hospital and Clinics on October 17, 2006. (Pl.'s Ex. 1B, Roger's Medical Records, 8/8/06-present date.)

**2.     Subjective Prong: Deliberate Indifference**

It is undisputed that on August 9, 2006, the plaintiff filed Offender Complaint DCI-2006-22984, complaining that while housed on Unit 10, Cell 4, there was peeling paint and dust coming from the wall and questioning whether or not it was asbestos. Defendant Wilson went to Unit 10, Cell 4 to check on the plaintiff's allegations and found that the plaintiff's cell had peeling paint but that there was no asbestos in the cell. Wilson noted that there were several cells on Unit 10 that were awaiting maintenance, repairs and painting and he contacted the appropriate department heads to see if the paint crew could be sent to Unit 10 to assist in this project. Based on this, the Inmate Complaint Examiner recommended that the complaint be dismissed with the modification that the offender complaint be sent to defendant Wilson and to Pat Toutant, Correctional Management Services Director for information and monitoring purposes.

It is undisputed that defendant Wilson's review of Unit 10, Cell 4, revealed that there was some peeling paint and cracks in the walls, but no water damage, asbestos, mold, or hazardous debris. Wilson did not believe that the cell posed any potential risk to DCI staff and/or inmates' health or safety. On August 13, 2006, defendant Jess accepted the ICE's recommendation and dismissed with modification Offender Complaint DCI-2006-22984.

It is undisputed that prior to Jess's review of Offender Complaint DCI-2006-22984, she was not made aware of any problems with the conditions of Unit 10, Cell 4. Jess was never made aware of any problems or conditions with this cell that would have required the plaintiff or any other inmate to be moved out of that cell.

The plaintiff contends that defendants Jess and Wilson were deliberately indifferent because they would have had first-hand knowledge of the tornado that damaged DCI in June 2004. He asserts that for approximately two years, the defendants did nothing to repair the damage caused by the tornado, and they did not attempt to relocate inmates to safer confinement. The plaintiff further asserts that when he told the defendants that his cell made him sick, they attempted to use the Inmate Complaint Review System to lie and cover up the fact that hazardous debris was found in the plaintiff's cell.

**3.     Discussion**

In *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005), the court held that the alleged extremely poor condition of the inadequate ventilation system at the Edgar City Jail was sufficient to constitute an objectively serious harm to two inmates.

> Duke and Jerry allege that the flow of black fiberglass dust into cells caused numerous nosebleeds and respiratory problems for both Jerry and Duke, as well as other inmates. Duke also alleges that the poor ventilation system exacerbated his serious asthma condition, which was compounded by the denial of his medication, discussed *infra*, and resulted in his being hospitalized and put on a breathing machine. This is harm which may be both a hazard to the Boards' current health (nosebleeds) and which may cause future health problems (worsened asthma or other serious respiratory harm). There is no question that exposing prisoners to conditions such as those described by the Boards "is contrary to current standards of decency." *Helling*, 509 U.S. at 35, 113 S.Ct. 2475. In *Helling*, the Supreme Court

went as far as to hold that exposure to environmental tobacco smoke ("ETS"), in certain circumstances, may very likely pose an objectively serious threat to future health sufficient to amount to cruel and unusual punishment. *Id.* at 32-36, 113 S.Ct. 2475. This case does not pose nearly as close or abstract a question. The Boards have alleged direct physical manifestation of the harm caused by the poor ventilation, as well as the quite likely possibility for future health problems; therefore, they have satisfied the objective prong of the test for an Eighth Amendment violation.

*Id.*

The court also found that the inmates in that case had alleged facts that would support a claim for deliberate indifference to an objectively unhealthy ventilation system. *Id.* at 486-87. The inmates cited the evidence of a heating contractor who visited the Jail and gave an opinion on the state of the ventilation system and repairs that needed to be done. *Id.* at 486.

> In his [the heating contractor's] opinion, the duct system in the Jail was contaminated with black mold and fiberglass liner and was a health hazard that needed replacement. However, the Boards contend that Farnham decided not to properly repair the problem, but instead only tried to mask the symptoms of the problem by performing a flimsy, non-productive band-aid procedure of merely vacuuming the grates. This, in spite of the fact that the private contractor/inspector, Richard Walker, specifically testified that he told Farnham that the duct work system needed to be replaced in order to cut down on the risk of disease and that if the duct system could not be replaced immediately the Jail, at least, needed to "clean the entire ductwork system, not simply where the air comes out."

*Id.*

In *Sain v. Wood*, 2008 WL 80643, at *6 (7th Cir. Jan. 9, 2008), a civilly-committed sex offender claimed that the conditions of his confinement violated the

Fourteenth Amendment.[22] The offender claimed that the conditions of his confinement – peeling paint, foul odor and lack of air-conditioning in his cell, inability to open his window without letting in bugs, and a cockroach infestation – amounted to a sufficiently serious deprivation. *Id.* The offender relied on *Board* for his assertion that poor ventilation may amount to a constitutional violation. *Id.* at *7. However, the court rejected that argument because *Board* "involved toxic mold in air ducts and evidence of severe nosebleeds and respiratory problems, conditions far more serious than those alleged by Mr. Sain." *Id.* The court went on to state that "[t]he peeling paint or an unpleasant odor in a cell described in this record, along with the absence of any evidence of serious injury, does not amount to constitutional deprivation." *Id.* The court concluded that a reasonable jury could not find that the offender's conditions of confinement were objectively serious enough to establish a constitutional violation. *Id.* The court further concluded that a doctor's failure to transfer the offender to a different cell was not deliberate indifference because that decision was based on a professional judgment as clinical director of the facility. *Id.* at *8.

In this case, there is a dispute concerning the conditions of the plaintiff's cell. On the one hand, the defendants maintain that the DSF inspected the cell and found that its condition was not detrimental to inmates' health. On the other hand, the plaintiff avers that the conditions in his cell caused him to get sick. Although not

---

[22]As a civilly committed detainee, the offender in *Sain* was protected by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment. *Id.* However, courts apply Eighth Amendment analysis to civil detainees since their protection against cruel and inhumane treatment has been defined as at least as extensive as that afforded to prisoners by the Eighth Amendment. *Id.*

entirely clear, the plaintiff's medical records indicate that the plaintiff probably did have an allergic reaction to debris in his cell resulting in numerous entries in his medical records, an order to have x-rays, and a visit to the UW Pulmonary Clinic. Based on this record, the court cannot say whether or not a serious risk to the plaintiff's safety existed in his cell.

However, the undisputed facts reveal that the defendants were not deliberately indifferent to the plaintiff's safety because they were not personally involved in the claim. Section 1983 does not create a claim based on collective or vicarious responsibility. *See Pacelli v. deVito*, 972 F.2d 871, 875 (7th Cir. 1992). An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). An official is personally involved if: a) he or she participates directly in the constitutional deprivation; b) acts or fails to act with reckless disregard of the plaintiff's constitutional rights; or c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his or her knowledge and consent. *Rascon*, 803 F.2d at 274; *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985); *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

Even if the conditions in the plaintiff's cell were sufficiently serious to implicate the Constitution, there is no indication that either defendant was aware of the conditions prior to the day that the plaintiff was transferred from the cell. No reasonable jury could find that the defendants were deliberately indifferent. Thus,

the defendants' motion for summary judgment will be granted and the plaintiff's motion for summary judgment will be denied.

## ADDITIONAL MATTERS

The plaintiff has filed two motions to appoint counsel and two motions for sanctions. His motions to appoint counsel will be denied as moot. In the plaintiff's November 6, 2007, motion for sanctions, he requests a hearing and a $20,000 monetary sanction because Racine Correctional Institution HSU Manager Susan Nygren altered his medical records and committed perjury with the intent to mislead the court in her affidavit in response to the plaintiff's request for injunctive relief. (This request was denied on August 29, 2007.) The plaintiff filed a similar motion for sanctions on November 20, 2007, which seeks the same relief.[23] However, after review of the plaintiff's motions and the defendants' response thereto, the court finds that the plaintiff has not established that perjury was committed and, therefore, sanctions are not warranted in this case. Thus, the plaintiff's motions for sanctions will be denied.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (Docket #51) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #72) be and the same is hereby **GRANTED**.

---

[23]In his second motion for sanctions, the plaintiff asserts that the first one was not actually a motion for sanctions but instead a motion to appoint counsel so that a motion for sanctions could be filed. The later motion also specifies that the plaintiff seeks sanctions against the defendants and their attorney, as opposed to non-party Susan Nygren.

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Docket #100) be and the same is hereby **DENIED.**

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Docket #101) be and same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for sanctions (Docket #101) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for sanctions (Docket #105) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

Dated at Milwaukee, Wisconsin, this 19th day of February, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge